FILED

2008 Apr-11  AM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

RANDLE MARTIN,

      Plaintiff,

v.                          CV-07-J-1394-W

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION

Pending before the court is the plaintiff's appeal of the final decision of the

Commissioner of Social Security denying the plaintiff disability benefits.

On June 28, 2004, the plaintiff filed an application for disability benefits (R. 42).[1]

The state agency denied the plaintiff's application and the plaintiff requested a

hearing before an administrative law judge ("ALJ") which was held on October

20, 2006 (R. 21, 224).  The ALJ found that the plaintiff was capable of performing

work available in significant numbers in the national economy and thus that the

---

[1]The plaintiff filed prior applications in 2001 and 2003 (R. 36, 39, 227).  These applications were denied by initial determination without further action by the plaintiff (R. 227). In light of these prior determinations, the plaintiff amended his alleged onset of disability date to June 28, 2003 (R. 227-28).

plaintiff was not disabled (R. 12-20A).  The plaintiff appealed the ALJ's decision

to the Appeals Council (R. 8).  The Appeals Council denied the plaintiff's request

for review making the ALJ's decision the final decision of the Commissioner (R.

4-6).

The court has considered the record and briefs of the parties.  For the

reasons set forth herein, the decision of the Commissioner is due to be

**REVERSED**.

### Factual Background

The plaintiff was born in 1976 and was thirty years old when the ALJ

rendered his decision (R. 19, 42, 228-29).  He has a tenth grade education and

prior work experience as a short order cook and construction laborer (R. 51, 229-

30).  The plaintiff alleges that he has been unable to work since June 28, 2003, due

to complications from multiple gunshot wounds, depression, and pain in his right

wrist, back, stomach, and hip (R. 228-36).

On April 19, 2001, the plaintiff was shot four times while he was sleeping

by an intruder in his home (R. 114).  Two of the gunshot wounds were in the left

buttock and one of the wounds was in the left lower back (R. 114).  The fourth

gunshot wound was in the right wrist (R. 114).  As a result of the wounds, the

plaintiff was hospitalized from April 19 until May 4 (R. 114).  During that time, he

2

underwent three principal procedures to treat the injuries (R. 114, 119-123).

On June 13, 2001, the plaintiff returned to the hospital complaining of abdominal pain (R. 153).  An examination revealed no evidence of bullet fragment or wound and no evidence of acute abdominal process (R. 153).

A consultative psychological examination of the plaintiff was performed by Dr. John Neville, a licensed psychologist, on September 16, 2003 (R. 133-36). The plaintiff reported to Dr. Neville that since he was shot, he has suffered from flashbacks and nightmares (R. 133).  The plaintiff stated that he was uncomfortable around other people and only slept an average of three hours per night (R. 133).  Dr. Neville administered the Wechsler Adult Intelligence Scale - III to the plaintiff (R. 134-35).  The plaintiff received a Verbal Scale score of 75, a Performance Scale score of 76, and a Full Scale score of 74 (R. 135).  These scores indicated intellectual functioning in the borderline range (R. 135).  Based on his examination of the plaintiff, Dr. Neville diagnosed the plaintiff with post-traumatic stress disorder and borderline intellectual functioning (R. 135). According to Dr. Neville, if the plaintiff received psychiatric treatment and psychotherapy, his prognosis over the next six to twelve months was considered good (R. 135).  Additionally, Dr. Neville concluded that the plaintiff

is not considered likely to handle functioning

3

independently well as he is not able to cope well with interpersonal interactions. [The plaintiff] is able to understand instructions.  Short-term memory is adequate.  His ability to carry out instructions is moderately to severely impaired by his psychological condition. [The plaintiff's] ability to respond to coworkers is severely impaired.  His ability to cope with ordinary work pressures is considered moderately to severely impaired.

(R. 136).

On May 14, 2004, a twenty-seven year old male named "Randall Martin" presented himself to the emergency room at UAB complaining that he injured his back while moving a carpet cleaner up several flights of steps (R. 151).  Although the plaintiff's name is on the emergency room record, the plaintiff denies that the patient is him (R. 151, 245-46).  Regardless, the patient was diagnosed with a lumbar strain and given a prescription for Ibuprofen and Lortab (R. 151).[2]

The plaintiff underwent a consultative examination performed by Dr. Emmanuel Odi on August 4, 2004 (R. 161-62).  The plaintiff stated to Dr. Odi that he suffered from abdominal and back pain as a result of the gunshot wounds (R. 161).  Dr. Odi's impression was that the plaintiff had no physical problems that would prevent him from working (R. 162).  Furthermore, Dr. Odi found that the

---

[2]The record indicates that the person described as seeking treatment on May 14, 2004, with plaintiff's name has "no other past medical history" (R. 151).  As plaintiff has an extensive past medical history, one could conclude that that person is not the plaintiff.

plaintiff had full range of motion in his spine, shoulder, elbow, wrist, hand, hip, knee, and feet (R. 163-64).

The following day - August 5 - the plaintiff underwent another consultative evaluation that was again performed by Dr. Neville (R. 165). Dr. Neville observed that the plaintiff's mood was dysphoric and that he appeared depressed (R. 166). Dr. Neville diagnosed the plaintiff with post-traumatic stress disorder, dysthymic disorder, and borderline intellectual functioning (R. 167). Dr. Neville stated that the plaintiff's condition was likely to improve if he received treatment (R. 167). The plaintiff's psychological prognosis over the next six to twelve months was considered fair (R. 167). In his opinion, the plaintiff

> would have difficulty being fully independent in his functioning due to his anxiety. [The plaintiff] was able to understand instructions. Short term memory was adequate. His ability to carry out instructions is moderately to severely impaired by his psychological condition. [The plaintiff's] ability to respond appropriately to coworkers is moderately to severely impaired. His ability to cope with ordinary work pressures is considered moderately to severely impaired.

(R. 167).

On September 1, 2004, the plaintiff visited Dr. Kitt Klaiss complaining of significant pain and difficulty sleeping (R. 201). Dr. Klaiss diagnosed the plaintiff with post traumatic arthritis, probable gastritis versus peptic ulcer disease, and

PTSD versus depression (R. 201).  The plaintiff was prescribed Zoloft and Elavil to help him sleep (R. 201).  He was also prescribed Darvocet for his pain, Celebrex, Nexium, and Prevacid (R. 201).

The plaintiff next saw Dr. Klaiss on October 5, 2006 (R. 200).  The note from that visit states that the plaintiff complained of back pain, "hands pain," and abdominal pain (R. 200).  Dr. Klaiss prescribed several medications for the plaintiff, but also noted that there were compliance issues present (R. 200).

A "Mental Residual Functional Capacity Assessment" for the plaintiff was completed by Dr. A.M. McCallister, a state agency non-examining reviewing psychiatrist, on September 14, 2004 (R. 183).  Dr. McCallister found only mild to moderate limitations in the plaintiff's ability to function (R. 183-84).

On October 13, 2006, Dr. Klaiss completed a "Physical Capacities Evaluation" and a "Clinical Assessment of Pain" on behalf of the plaintiff (R. 197-98).  Dr. Klaiss stated that the plaintiff could lift twenty pounds occasionally and ten pounds frequently (R. 197).  He stated that the plaintiff could sit for five hours and stand or walk for three hours over the course of an eight hour day (R. 197).  Finally, Dr. Klaiss surmised that the plaintiff would be required to miss three days per month as a result of his impairments or treatment (R. 197).  In the "Clinical Assessment of Pain," Dr. Klaiss stated that the plaintiff's pain was present to such

an extent as to be distracting to adequate performance of daily activities or work and that physical activity greatly increased the plaintiff's pain to such a degree as to cause distraction from tasks or total abandonment of task (R. 198).  Dr. Klaiss further stated that the side effects of the prescribed medications would cause the plaintiff to have some of the limitations described presently, but not to such a degree as to cause serious problems in most instances (R. 198).

At the hearing on October 20, 2006, the ALJ called Dr. Julie Russell, a vocational expert, to testify (R. 228).  She testified that an individual with the plaintiff's limitations could not perform past relevant work, but could perform other jobs such as bench work, automatic machine tender, and cleaning occupations (R. 249-50).  She further testified that if the plaintiff had the limitations identified by Dr. Klaiss, then he could not perform the cleaning occupations, but could still perform the bench work and automatic machine tender jobs (R. 250-51).  In addition, the VE testified that if Dr. Klaiss' opinions regarding the plaintiff's pain and absenteeism were found fully credible, then that would preclude the plaintiff from all work (R. 251-52).  Similarly, if Dr. Neville's opinions that the plaintiff was not capable of handling stress or dealing with co-workers or supervisors on a consistent basis were found to be credible then the plaintiff would be precluded from all work activity (R. 252).

In his opinion, the ALJ found that the plaintiff had the following severe combination of impairments: status post gunshot wounds to the right wrist and abdomen, borderline intellectual functioning, depression, and anxiety (R. 14). The ALJ further found that the plaintiff had the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours in an eight hour day, and sit six hours in an eight hour day (R. 15). According to the ALJ, the plaintiff was capable of working in a low stress job which involved completing simple tasks with minimal contact with other co-workers, supervisors, and the general public (R. 15). Next, the ALJ found that the plaintiff could not perform any past relevant work (R. 19). However, the ALJ found that the plaintiff was not entitled to benefits because he was capable of performing jobs that exist in significant numbers in the national economy (R. 20).

In support of his opinion, the ALJ gave significant weight to the report of the Disability Determination Service Psychologist [sic] (R. 18).[3] The ALJ also gave significant weight to the report of Dr. Odi over the opinion of Dr. Klaiss (R. 18). The ALJ found the plaintiff's testimony of disabling pain and mental problems to not be fully credible in light of the fact that the plaintiff sought no medical treatment for three years following his initial treatment for the gunshot

---

[3]Dr. A.M. McAlister is actually a psychiatrist (R. 185).

wounds (R. 17-18).  In particular, the ALJ notes that the plaintiff sought treatment
only after the disability application process began (R. 18).

## Standard of Review

This court's review of the factual findings in disability cases is limited to
determining whether the record contains substantial evidence to support the ALJ's
findings and whether the  correct legal standards were applied.  42 U.S.C. §
405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wolfe v. Chater*, 86 F.3d
1072, 1076 (11th Cir. 1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.
1990).  "Substantial evidence" is generally defined as "such relevant evidence as a
reasonable mind would accept as adequate to support a conclusion."  *Richardson*,
402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938));
*Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Bloodsworth v. Heckler*,
703 F.2d 1233, 1239 (11th Cir. 1983).

In determining whether substantial evidence exists, this court must
scrutinize the record in its entirety, taking into account evidence both favorable
and unfavorable to the Commissioner's decision.  *Lamb v. Bowen*, 847 F.2d 698,
701 (11th Cir.1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987).  Even
if the court finds that the evidence weighs against the Commissioner's decision,

the Court must affirm if the decision is supported by substantial evidence.

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *see also Harwell v.*

*Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984); *Martin v. Sullivan*, 894 F.2d 1520,

1529 (11th Cir. 1990).

This court may not decide facts anew, reweigh evidence or substitute its

judgment for that of the ALJ, even if the court finds that the weight of the

evidence is against the Commissioner's decision. *Martin*, 894 F.2d at 1529. This

court must affirm the decision of the ALJ if it is supported by substantial evidence.

*Miles*, 84 F.3d at 1400; *Bloodsworth*, 703 F.2d at 1239. However, no such

presumption of correctness applies to the Commissioner's conclusions of law,

including the determination of the proper standard to be applied in reviewing

claims. *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir. 1991); *Cornelius v.*

*Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Furthermore, the

Commissioner's "failure to apply the correct law or to provide the reviewing court

with sufficient reasoning for determining that the proper legal analysis has been

conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

### Discussion

In his decision, the ALJ gave significant weight to Dr. Odi's opinion over

the opinion of Dr. Klaiss, the plaintiff's treating physician (R. 18). The testimony

of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Eleventh Circuit Court of Appeals has concluded that "good cause" exists when the: (1) treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons. *Id.*

In this case, the ALJ failed to provide adequate justification for according more weight to the opinion of Dr. Odi than Dr. Klaiss. If Dr. Klaiss' opinion was accorded substantial weight, then, according to the VE, the plaintiff would be unable to work and thus found disabled. (R. 251-52). In particular the VE based her conclusion on Dr. Klaiss' opinions that the plaintiff's impairments would require him to miss three days of work per month and that the plaintiff's pain was present to such an extent as to prevent adequate performance of daily activities of work (R. 251-52). The ALJ discredited Dr. Klaiss' opinion because "she saw the claimant infrequently, questioned his medical compliance, and did not document an examination as thorough as that performed by the consultative physician" (R.

11

18).

Instead of relying on the opinion of the treating physician, the ALJ accorded substantial weight to the consultative evaluation performed by Dr. Odi (R. 18). According to Dr. Odi, the plaintiff had no physical problems which would prevent him from working.  (R. 162).  However, as noted by the plaintiff, Dr. Odi's report does not contain a diagnosis nor does it contain an assessment of the plaintiff's ability to work.  Under the regulations, a complete consultative examination must contain a diagnosis and prognosis of the plaintiff's impairment and a statement about what the plaintiff can still do in spite of the impairments.  20 C.F.R. § 404.1519n(c)(1-6).  In addition, the statement should state the plaintiff's ability to do work related functions such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling.  *Id*.

The consultative examination report by Dr. Odi does not provide the good cause necessary to reject the opinion of a treating physician.  The ALJ discounted Dr. Klaiss' opinion because she saw him infrequently and because of the thoroughness of Dr. Odi's examination.  However, Dr. Odi only saw the plaintiff one time and his report is not suggestive of a thorough examination.  For these reasons, the ALJ should not have given Dr. Odi's opinion more weight than the opinion of the plaintiff's treating physician.  Since the ALJ failed to give the

12

treating physician's opinion substantial weight, the ALJ's decision that the plaintiff can perform a wide range of work at the light level of physical exertion is not supported by substantial evidence.

This court's decision to reverse the ALJ is further justified by the ALJ's decision to give significant weight to the report of the Disability Determination Service Psychologist [sic] who never examined the plaintiff (R. 18).  The opinion of a non-examining physician is entitled to little weight and taken alone, does not constitute substantial evidence to support an administrative decision.  *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990).  This is especially true in this case where the opinion of the non-examining physician is not supported by either Dr. Neville, who examined the plaintiff twice, or Dr. Klaiss, the plaintiff's treating physician.  The only opinion which supports the non-examining physician is Dr. Odi's which, as explained above, is not entitled to significant weight.

While the court notes that the medical record of evidence in this case is far from voluminous, there is not substantial evidence to support the ALJ's finding that the plaintiff is not disabled.  The only credible medical evidence - the opinions of Dr. Klaiss and Dr. Neville - supports a finding that the plaintiff is disabled.  The court thus finds that the ALJ erred by substituting his own judgment for those of the medical professionals.  *Freeman v. Schweiker*, 681 F. 2d 727, 731

13

(11th Cir. 1982).  Therefore, the ALJ's decision is due to be reversed.

## Conclusion

When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Commissioner should have made. *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D.Fla.1984).  Thus, this court has the authority under 42 U.S.C. §405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner's determination is in plain disregard of the overwhelming weight of the evidence. *Davis v. Shalala*, 985 F.2d at 534; *Bowen v. Heckler*, 748 F.2d 629, 636 (11th Cir.1984).  Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED.**  This case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion.

**DONE** and **ORDERED** the 11th day of April 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE